456 S.E.2d 140

**Shirley J. ODOM**

v.

**RED LOBSTER # 235, et al.**

**Record No. 1193–94–4.**

Court of Appeals of Virginia,
Alexandria.

April 18, 1995.

(Donald Allen, on brief), for appellant. Appellant submitting on brief.

Lisa C. Healey (Elizabeth A. Zwibel; Siciliano, Ellis, Dyer & Boccarosse, on brief), for appellees.

Present: KOONTZ and FITZPATRICK, JJ., and DUFF, Senior Judge.

KOONTZ, Judge.

Shirley J. Odom (claimant) appeals an order of the Virginia Workers' Compensation Commission (commission) dismissing her claim for benefits as not timely filed. Claimant asserts that the statute of limitations was tolled by estoppel or, in the alternative, that the doctrine of imposition permits the commission to accept the filing of her claim in order to do full justice.[1] Because the acts and omissions of Liberty Mutual Insurance Company (carrier), the workers' compensation carrier for claimant's employer Red Lobster # 235 (employer), and the acts of the employees of the commission served to prejudice the claimant, we hold that the doctrine of imposition

---

1. Claimant further asserts that if the statute of limitations was not tolled, the filing of medical evidence with the commission was adequate to preserve her claim. This second issue is mooted by our favorable resolution of the first.

should be applied to the facts of this case. Accordingly, we reverse and remand with instructions to reinstate the claim on the hearing docket.

Claimant sustained a work-related injury on January 15, 1990 when she slipped and fell in employer's kitchen, injuring her right knee. Carrier accepted the claim as compensable and paid benefits without an award through August 6, 1992. On that date, carrier ceased payments, asserting that, pursuant to the two-year statute of limitations of Code § 65.2–601, the claim was time-barred from January 15, 1992. On December 31, 1992, claimant filed an application with the commission to determine whether employer and carrier were estopped from asserting the statute of limitations. *See* Code § 65.2–602 (providing for the tolling of the statute of limitations under certain circumstances). Claimant sought temporary total disability benefits for the period January 24, 1990 to August 17, 1992 (one and one-half weeks more than she was actually paid) and unspecified permanent partial disability benefits.

The record shows that employer filed a first report of accident on March 4, 1990. Prior to that date, claimant had received a workers' compensation pamphlet from carrier and began receiving regular temporary total disability payments. At no time did carrier or employer file a memorandum of agreement with the commission accepting the claim as compensable. *See* Code § 65.2–701.

Carrier's pamphlet identifies the wage loss and medical benefits payable under the Workers' Compensation Act and included handwritten calculations of the wage loss benefits claimant would receive. Among other statements made in the pamphlet, claimant was informed that carrier "do[es] not require you to employ anyone to help you secure the benefits to which you are entitled. They are paid voluntarily by [carrier] for injuries and disabilities covered under the Act." The pamphlet further stated that "[c]hecks are issued every 14 days, and they will continue until you are physically able to return to work."

The concluding paragraph of the pamphlet stated that claimant "[could] deal directly with [carrier], one of the most respected service-oriented insurance companies in the country." Following this paragraph, the pamphlet stated that "information is available" from the commission if "questions remain." This final provision was substantially obliterated by a stamp giving the address of the commission. Claimant testified that she understood this pamphlet to mean that her claim had been accepted and that she would receive benefits so long as she remained disabled.

During the period that claimant was receiving wage loss benefits, carrier informed her twice by letter that she was receiving an upward cost-of-living adjustment in the benefits to which she was "entitled ... under Section 65.1–99.1." Carrier also paid for all medical and rehabilitation services and sent a nurse to claimant's home to discuss her rehabilitation program. During this period, claimant had numerous telephone and personal contacts with carrier's claims personnel regarding receipt of her benefits. She was not advised during these contacts that she needed to file a claim with the commission.

Claimant contacted the Richmond office of the commission in October 1990 by telephone and was told that she "[had] a claim number and it had been filed and everything [was] all right" with her claim. After this contact, the commission sent claimant a standard "blue letter" pamphlet instructing her to secure her rights by filing a claim within the statutory time period. In January 1992, recognizing that the statute of limitations would soon expire, claimant's counsel contacted both the Alexandria and Richmond offices of the commission and was informed that the claim had been filed.

When carrier ceased payment of benefits, claimant filed an application for benefits, asserting that employer and carrier were estopped from relying on the statute of limitations. The deputy commissioner ruled that carrier's acts did not support a finding "of fraud, concealment or imposition or [have] in any way acted to prejudice the rights of the claimant." With

respect to the acts of the employees of the commission, the deputy commissioner opined that the filing of the Employer's First Report of Accident could be interpreted as the "claim" referred to by commission employees contacted by claimant and her counsel.

Claimant sought review of this decision by the full commission. The majority of the commission affirmed the deputy commissioner's findings. The dissenting commissioner noted that carrier's benefits pamphlet contained phrases which implied that claimant need not act so long as carrier accepted her claim as compensable. This commissioner concluded by noting that claimant's "impression that her claim had been accepted as compensable and that she would receive all legal entitlement was reinforced by statements of the Workers' Compensation Commission.... [T]he carriers' conduct served to lull the claimant into a sense that [an] agreement had been reached.... It would be a manifest injustice as well as contrary to the Act to bar the claim in this context."

We agree with the majority of the commission that the carefully drafted phrases of carrier's pamphlet, even when viewed in the overall context of carrier's conduct in handling claimant's benefits, do not rise to the level of fraud dictated by the standard for estoppel applied to workers' compensation claims in this Commonwealth. On appellate review, the Court "will construe the evidence in the light most favorable to the prevailing party." *Crisp v. Brown's Tysons Corner Dodge, Inc.*, 1 Va.App. 503, 504, 339 S.E.2d 916, 916 (1986). Following that standard, we cannot say that carrier's acts and omissions evince a "reasonably calculated [effort] to induce ... [the employee] to refrain from filing [a] claim." *Stuart Circle Hosp. v. Alderson*, 223 Va. 205, 208, 288 S.E.2d 445, 446–47 (1982).

Although claimant's belief that she was not required to take further action to secure her benefits was reasonable and compelling, the doctrine of estoppel requires the aggrieved party to show an affirmative, deliberate effort to prejudice the claimant's right to file a claim with the commission within the

limitations period. Carrier's acts and omissions in this instance were passive, and without clear evidence of a deliberate fraud; therefore, estoppel does not apply. *Id.; see also Cibula v. Allied Fibers & Plastics,* 14 Va.App. 319, 324–25, 416 S.E.2d 708, 711 (1992), *aff'd,* 245 Va. 337, 428 S.E.2d 905 (1993). Moreover, an employee is "deemed not prejudiced if ... [s]he has received after the accident a workers' compensation guide ... or a notice" from the commission describing the need to file a claim with the commission. Code § 65.2–602.

We now consider the applicability of the doctrine of imposition. The deputy commissioner addressed imposition in conjunction with estoppel, finding that neither applied. The majority of the commission, while not directly addressing imposition, implicitly approved that finding in affirming the deputy commissioner's decision. Although not expressly stated, the dissenting commissioner implicitly found that this was an appropriate case for application of this doctrine in order to avoid "a manifest injustice." We agree with the dissent.

Within the principles established by statutes and the decisions construing them, the commission has "jurisdiction to do full and complete justice in each case." From that principle has developed the concept known as "imposition," which empowers the commission in appropriate cases to render decisions based on justice shown by the total circumstances even though no fraud, mistake or concealment has been shown.

*Avon Products, Inc. v. Ross,* 14 Va.App. 1, 7, 415 S.E.2d 225, 228 (1992) (citations omitted).

In *Cheski v. Arlington County Public Schools,* 16 Va.App. 936, 434 S.E.2d 353 (1993), we held that the doctrine of imposition does not apply where a carrier's or employer's acts are consistent with an endeavor to comply with the Act. *Id.* at 940, 434 S.E.2d at 356. In *Cheski,* the sole basis for the claimant's assertion of the doctrine of imposition was a letter from her employer concerning the compensability of her medical benefits. We agreed with the commission that the record

did not establish claimant's reliance on this letter to her detriment. *Id.* at 939, 434 S.E.2d at 355.

Here, the record shows not one act, but a series of acts by both carrier and commission employees upon which claimant would naturally and reasonably have relied to her detriment. Moreover, carrier's omission in failing to execute and file a memorandum of agreement pursuant to Code § 65.2–701, frustrated a primary purpose behind the Act—the expedient entry of awards in cases where the parties agree as to the compensability—further prejudicing claimant's rights. *See National Linen Service v. McGuinn,* 5 Va.App. 265, 269, 362 S.E.2d 187, 189 (1987) (en banc).

Under the doctrine of imposition, unlike estoppel, the receipt of a "blue letter" does not create a *de jure* bar to a finding that claimant suffered prejudice. Rather, receipt of the "blue letter" is simply one circumstance among others to be considered. Here, claimant did not receive the "blue letter" until after carrier had begun paying benefits and she had been informed, erroneously, by commission employees that her claim had been filed.

As in *Avon,* the factors here supporting the usual application of the statute of limitations are absent. *Avon,* 14 Va.App. at 7, 415 S.E.2d at 228. "[T]he issue is whether under the totality of the circumstances shown, the actions of the employer and its carrier created an imposition on the commission and the claimant which empowered the commission 'do full and complete justice.'" *Id.* at 8, 415 S.E.2d at 229. In addition, the commission employees represented to claimant that a claim had been filed. These representations, though not chargeable to employer or carrier, further prejudiced the claimant's rights. Under the doctrine of imposition, the commission's "jurisdiction to do full and complete justice" includes the power to render decisions based "on justice shown by the total circumstances even though no fraud, mistake or concealment has been shown." *Id.* at 7, 415 S.E.2d at 228. Under the total circumstances of this case, the commission should have exercised that jurisdiction.

By permitting the claim to go forward under the circumstances of this case, employer and carrier are in no worse a position than they would have been had not their acts and omissions and the representations of the employees of the commission combined to prejudice claimant. They may still contest the claim through the hearing docket and challenge the ultimate result, if unfavorable to them, by appeal. Thus, in applying the doctrine of imposition, we permit the commission to enforce the intent of the Act and to preserve the rights of the parties as they existed before the statute of limitations expired.

For these reasons, we reverse the order of the commission dismissing claimant's application and remand with instructions to reinstate the claim on the hearing docket as timely filed.

*Reversed and remanded.*